**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HELENA WORLD CHRONICLE, LLC | |
| *Plaintiff*, | Case No. 1:23-cv-03677 |
| v. | HON. AMIT P. MEHTA |
| GOOGLE LLC and ALPHABET INC., | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES
<u>IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................1

II.     LEGAL STANDARD ..................................................................................3

III.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNLAWFUL
        MONOPOLY MAINTENANCE (COUNT ONE)..........................................4

        A.      Plaintiff Lacks Standing...............................................................4

        B.      Plaintiff Has Not Adequately Alleged That Google Engaged in
                Exclusionary Conduct....................................................................6

IV.     PLAINTIFF HAS FAILED TO STATE A CLAIM FOR ATTEMPTED
        MONOPOLIZATION OF A MARKET FOR DIGITAL INFORMATION
        PUBLISHING (COUNT TWO). ...................................................................13

        A.      Plaintiff Lacks Standing...............................................................13

        B.      Plaintiff Has Not Adequately Pleaded a Relevant Market....................17

        C.      Plaintiff Has Not Adequately Pleaded a Dangerous Probability of Success
                in Monopolizing the Relevant Market. ...........................................19

        D.      Plaintiff Has Not Adequately Alleged That Google Engaged in
                Exclusionary Conduct. ................................................................21

V.      PLAINTIFF HAS NOT PLEADED A VIOLATION OF SECTION 7 OF THE
        CLAYTON ACT (COUNT THREE). .............................................................21

        A.      Plaintiff Has Not Pleaded a Relevant Market and Lacks Standing in Any
                Event. ......................................................................................22

        B.      The Claim Is Time Barred. ..........................................................22

        C.      Plaintiff Has Not Adequately Pleaded Other Conduct That Is Actionable
                under Section 7 of the Clayton Act...............................................24

VI.     PLAINTIFF HAS NOT PLEADED AN UNLAWFUL TYING
        ARRANGEMENT (COUNT FOUR)...............................................................25

        A.      Plaintiff Lacks Standing...............................................................26

        B.      Plaintiff Has Not Pleaded a Tying Claim with Regard to "Digital News
                and Reference Products."..............................................................27

        C.      Plaintiff Has Not Pleaded a Tying Claim with Regard to "Google's
                Revised AdSense Program."..........................................................29

        D.      Plaintiff Has Not Adequately Alleged That Competition Was Harmed in
                the Tied Markets. .......................................................................31

VII.    PLAINTIFF HAS NOT PLEADED AN UNLAWFUL AGREEMENT
        BETWEEN GOOGLE AND APPLE (COUNT FIVE)....................................32

        A.      Plaintiff Lacks Standing...............................................................32

i

B.    The Complaint Fails to Allege a Sherman Act Violation under Either the *Per Se* Rule or the Rule of Reason..........................................................................34

C.    Plaintiff's Conclusory Assertion that Google Caused Apple to "Shelve" Its "Plan" To "Use Siri as a Form of Search Engine" Is Not Plausibly Supported by the Facts Pled..............................................................................36

VIII.   CONCLUSION..............................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ...................................30

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051 (9th Cir. 1999) ................................6

*\*Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799 (D.C. Cir. 2001) .....................4, 14, 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................3

*Athos Overseas, Ltd. v. YouTube, Inc.*, 2022 WL 910272 (S.D. Fla. Mar 29, 2022) ...................29

*Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98 (3d Cir. 1992) ......................................................20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................................3, 36

*Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir. 2007) .................................................6

*\*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ................................. passim

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717 (1988).....................................................34

*City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921 (2d Cir. 1981) .....................................7

*City of New York v. Grp. Health Inc.*, 649 F.3d 151 (2d Cir. 2011)..............................................22

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ........................................................1, 16, 32

*Comm. on Ways & Means, U.S. House of Reps. v. U.S. Dep't of Treasury*, 45 F.4th 324
   (D.C. Cir. 2022) ......................................................................................................................3

*Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666 (D.C. Cir. 2005).......................................7

*Dial A Car, Inc. v. Transp., Inc.*, 884 F. Supp. 584 (D.D.C. 1995).........................................17, 20

*Dominguez v. UAL Corp.*, 666 F.3d 1359 (D.C. Cir. 2012) ........................................................15

*E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1 (1st Cir.
   2004) .....................................................................................................................................11

*\*Fotobom Media, Inc. v. Google LLC*, No. 22-cv-00712-APM, ECF No. 27 (D.D.C. Feb.
   27, 2024) .......................................................................................................................5, 6, 34

*FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................17

*FTC v. Qualcomm Inc.*, 969 F.3d 974 (9th Cir. 2020)............................................................8, 12

*Gross v. Wright*, 185 F. Supp. 3d 39 (D.D.C. 2016).....................................................................33

*Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253 (9th Cir. 2008) ...................................................16

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015)..............17

*Hemp Indus. Assoc. v. DEA*, 36 F.4th 278 (D.C. Cir. 2022).......................................................36

*Hicks v. PGA Tour, Inc.*, 897 F.3d 1109 (9th Cir. 2018)..............................................................18

*Hodges v. WSM, Inc.*, 26 F.3d 36 (6th Cir. 1994)......................................................................15

*Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417 (5th Cir. 2001)........................................................5

*In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151 (2d Cir. 2016) ..................................5

*In re Cox Enters., Inc.*, 871 F.3d 1093 (10th Cir. 2017)................................................31

*In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 44 F.4th 959 (10th Cir. 2022) ...............7

*In re McCormick & Co.*, 217 F. Supp. 3d 124 (D.D.C. 2016)...........................................34, 35, 36

*In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987 (N.D. Cal. 2010) ...............................31

*Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346 (Fed. Cir. 1999).......................................7

*\*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) .......................................28, 30

*Jibril v. Mayorkas*, 20 F.4th 804 (D.C. Cir. 2021) .......................................................33

*\*Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976 (D.C. Cir. 2017) .................1, 4, 34

*Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095 (W.D. Wash. 2014) ..............................30

*JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775 (7th Cir. 1999).........................12

*Kaufman v. Time Warner*, 836 F.3d 137 (2d Cir. 2016).................................................28

*Kenney v. Am. Bd. of Internal Medicine*, 847 F. App'x 137 (3d Cir. 2021)............................28

*Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023)....................................................3

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007)...............................34

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..........................................................4, 26

*Marchese v. Cablevision Sys. Corp.*, 2011 WL 149917 (D. N.J. Jan. 14, 2011).........................29

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..............................12

*M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160 (4th Cir. 1992) (en banc) ..............................................................................................20

*Meijer, Inc. v. Barr Pharms., Inc.*, 572 F. Supp. 2d 38 (D.D.C. 2008) ...............................34, 35

*Mulvey v. Am. Airlines Inc.*, 2019 WL 1060877 (D.D.C. Mar. 6, 2019).................................16

*\*New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023) ...............................21, 23, 24

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007) (en banc) ......................................4

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370 (7th Cir. 1986).......................11

*Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018) ................................................ *passim*

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009) ...................................7, 9

*Ruiz v. Millennium Square Residential Ass'n*, 466 F. Supp. 3d 162 (D.D.C. 2020) ...................37

*RxUSA Wholseale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218 (E.D.N.Y. 2009)...................20

*Serfecz v. Jewel Food Stores*, 67 F.3d 591 (7th Cir. 1995)................................................6

*Sky Angel U.S., LLC v. Nat'l Cable Satellite Corp.*, 947 F. Supp. 2d 88 (D.D.C. 2013) ..17, 18, 19

*Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d 308 (D.D.C. 2011).................................11

*Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57 (1st Cir. 2004) ....................................................................................................................11

*Tarabishi v. McAlester Regional Hosp.*, 951 F.2d 1558 (10th Cir. 1991) ....................................20

*Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97 (D.D.C. 2018) ................................15, 26, 33

*Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810 (N.D. Cal. 2021) ................................................31

*United States v. Bertelsmann SE & Co.*, 646 F. Supp. 3d 1 (D.D.C. 2022) ..................................24

*United States v. Google LLC*, 2023 WL 4999901 (D.D.C. Aug. 4, 2023) ................................7, 37

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (en banc) .......................... *passim*

*Valley Prods. Co. v. Landmark, a Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398 (6th Cir. 1997) .......................................................................................................................27

*W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85 (3d Cir. 2010) ..............................27

*Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014) ..................................................23

## STATUTES AND RULES

Section 2 of the Sherman Act, 15 U.S.C. § 2 .......................................................... *passim*

Section 4B of the Clayton Act, 15 U.S.C. § 15b ..........................................................23

Section 7 of the Clayton Act, 15 U.S.C. § 18 ........................................................21, 24

## I.    INTRODUCTION

Plaintiff Helena World Chronicle, LLC owns and publishes two local newspapers in Arkansas.  Compl. ¶ 10.  Both of its papers—*Helena World* and *Monroe County Argus*—"are available in print and digital media and both deliver news and information to subscribers and online readers."  *Id.* ¶ 19.  Users arrive at the websites for *Helena World* and *Monroe County Argus* in multiple ways, including by clicking links to the sites that appear in Google Search results.  *See id.*

Beyond these scant allegations, the Complaint has little to say about Plaintiff, and its scattershot assertions have even less to do with stating a plausible claim for relief against Defendants Google LLC and Alphabet Inc. (collectively, "Google").  The Complaint instead includes a compilation of allegations made in other cases by other plaintiffs, all of whom are differently situated than Plaintiff in crucial respects.  For example, Plaintiff selectively borrows from the record in *United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C.), in making allegations about Google entering into agreements to be the default search engine in certain web browsers or pre-installing its search engine on certain Android mobile devices.  *E.g.*, Compl. ¶¶ 75-89.  But the Complaint is devoid of factual allegations that Plaintiff—as the owner of two local newspapers—personally experienced a "concrete, particularized" injury that is "fairly traceable" to these agreements.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).  And even if Plaintiff could make that showing, it would still lack antitrust standing—a threshold requirement that determines "whether the plaintiff is a proper party to bring a private antitrust action."  *Johnson v. Comm'n on Presidential Debates*, 869 F.3d 976, 981 (D.C. Cir. 2017).

The absence of Article III and antitrust standing pervades the Complaint and should result in dismissal of all of Plaintiff's claims.  To offer another example:  Plaintiff makes allegations regarding acquisitions of companies ranging from Android to YouTube and

1

DoubleClick to AdMeld. *E.g.*, Compl. ¶¶ 56-67. Yet all of these deals occurred over a decade ago, and none of them is alleged to have caused a legally cognizable injury to Plaintiff. The Complaint also alleges more recent developments, such as a change to the structure of the fees collected by Google AdSense for Content, which website owners use to sell display advertising space on their sites. *Id.* ¶¶ 179-85. Again, however, the Complaint fails to allege that Plaintiff even uses AdSense, let alone that it has suffered the kind of injury that allows a private plaintiff to seek redress under the antitrust laws. And any alleged harm that Plaintiff attempts to connect to its assertion that Google "crawls" or "scrapes" publicly available webpages and develops technologies for responding to user queries (*e.g.*, Compl. ¶¶ 90-178) is categorically not a cognizable antitrust injury, *i.e.*, an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

While it is enough to conclude that Plaintiff is not a proper party to bring any of the claims it has asserted, all five counts of the Complaint should also be dismissed for a host of other reasons. For instance: Count One, which claims unlawful monopoly maintenance in alleged markets for general search services and search advertising, is marred by a failure to allege that Google engaged in exclusionary conduct to maintain purported monopoly power in the alleged markets. *See* Section III *infra*. Count Two is an attempted monopolization claim that suffers the same fatal flaws and also lacks a well-pleaded relevant market or facts supporting the conclusory allegation that there is a dangerous probability that Google will monopolize that market—independent threshold requirements that warrant dismissal. *See* Section IV *infra*. Count Three, which claims a violation of Section 7 of the Clayton Act that prohibits certain kinds of acquisitions, is subject to the defects identified above and is also time barred. *See*

Section V *infra*.  Count Four alleges two theories of tying that are each implausible for a number of reasons, including a failure to allege a tie or harm to competition in a relevant market.  *See* Section VI *infra*.  Finally, Count Five's claim regarding the 2016 Information Services Agreement between Google and Apple should be dismissed because it fails to plead a claim for relief under either the *per se* rule or the rule of reason, and does not plausibly allege a restraint of trade in any event because Plaintiff plainly does not even understand the clear meaning of the single document it cites.  *See* Section VII *infra*.

For all of these reasons and more, the Court should dismiss Plaintiff's Complaint.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a court reviewing a motion to dismiss "accept[s] the complaint's factual allegations as true," the court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Comm. on Ways & Means, U.S. House of Reps. v. U.S. Dep't of Treasury*, 45 F.4th 324, 330 (D.C. Cir. 2022).  The court likewise "need not accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint."  *Langeman v. Garland*, 88 F.4th 289, 294 (D.C. Cir. 2023); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (observing that while "it is one thing to be cautious before dismissing an antitrust complaint in advance of discovery," it is "quite another to forget that proceeding to antitrust discovery can be expensive").

When evaluating a motion to dismiss, a court may consider "documents either attached to or incorporated in the complaint" along with "documents attached to a motion to dismiss if they are 'referred to in the complaint,' integral to the claim(s), and if their authenticity is undisputed."  *Langeman*, 88 F.4th at 291-92.

### III.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNLAWFUL MONOPOLY MAINTENANCE (COUNT ONE).

#### A.   Plaintiff Lacks Standing.

Plaintiff's claim that Google unlawfully maintained a monopoly in alleged markets for general search services and search advertising should be dismissed because Plaintiff lacks antitrust standing—a "claim-specific" doctrine that "asks 'whether the plaintiff is a proper party to bring a private antitrust action.'" *Johnson*, 869 F.3d at 981.  Unlike a plaintiff asserting claims arising under certain other statutes, a private antitrust plaintiff must do more than allege facts sufficient to show that it possesses Article III standing. *Id.*; *see NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc) ("[A]ntitrust standing and Article III standing are not one and the same, and we not only may—but we must—reject claims under Rule 12(b)(6) when antitrust standing is missing.").  In particular, "[a] private antitrust plaintiff does not acquire standing merely by showing that it was injured in a proximate and reasonably measurable way by conduct of the defendant violating the antitrust laws (injury-in-fact)." *Andrx Pharms., Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 812 (D.C. Cir. 2001).  "Nor is it enough that the injury be causally connected to the acts that violate the antitrust laws (causation)." *Id.*[1]

Plaintiff lacks antitrust standing to assert Count One because it is not a "participant" in either of the markets alleged in that count, *i.e.*, general search services and search advertising,

---

[1] As discussed further in Sections IV.A, VI.A, and VII.A *supra*, Plaintiff has also failed to plead facts sufficient to show it has Article III standing, which Helena "bears the burden of establishing." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  Because the Court may dismiss the claims on either ground, this section focuses on a threshold basis for dismissing Count One that would apply *even if* Plaintiff could sufficiently allege Article III standing with respect to certain alleged conduct. *E.g.*, *Johnson*, 869 F.3d at 981-82 (affirming dismissal for lack of antitrust standing rather than resolving whether the alleged injury could be redressed for purposes of determining Article III standing).  If the Court determines that Plaintiff lacks Article III standing with respect to some or all of the conduct alleged, then it should also dismiss Count One on that basis.

and otherwise does not plead injuries bearing a relationship to those markets.  Compl. ¶¶ 213-20;
*see, e.g.*, *Fotobom Media, Inc. v. Google LLC*, No. 22-cv-00712-APM, ECF No. 27 at 6 (D.D.C.
Feb. 27, 2024) (evaluating "whether the plaintiff is a market 'participant'" and "hold[ing] that
Plaintiff lacks antitrust standing to pursue claims with respect to the market for general search
services"); *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016)
(explaining that "[g]enerally, only those that are participants in the defendants' market can be
said to have suffered antitrust injury," and "'[p]arties whose injuries … are experienced in
another market do not suffer antitrust injury'" (quoting *Hughes v. Tobacco Inst., Inc.*, 278 F.3d
417, 423 (5th Cir. 2001)).

The Complaint alleges that "[t]he general search services market … consists of 'general
search engines, which are "one-stop shops" consumers can use to search the internet for answers
to a wide range of queries.'"  Compl. ¶ 32.  In contrast to "a vertical search service provider"
such as "Amazon," the Complaint alleges that "[g]eneral search engines can answer all types of
queries and return a wide range of results."  *Id.* ¶¶ 32-33.  The Complaint does not allege facts
showing that Plaintiff participates in this alleged relevant market for general search services, let
alone that it has suffered a cognizable injury arising from any conduct relating to it.  Rather,
Plaintiff characterizes itself as the owner of "two newspapers" that "deliver news and
information to subscribers and online readers."  *Id.* ¶ 19.  The Complaint also does not allege
facts showing that Plaintiff participates in the asserted market for search advertising, which the
Complaint scarcely seeks to define, but is not alleged to include advertising in newspapers' print
editions or on their websites.  *See id.* ¶ 38.

Because Plaintiff is not "a participant in the relevant market" who allegedly "'suffered its
injury in the market where competition is being restrained,'" it cannot manufacture antitrust

standing through any other purported connection to the alleged relevant markets.  *Fotobom Media*, ECF No. 27 at 8 (quoting *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999)).  For example, Plaintiff does not have standing to pursue Count One by virtue of allegations that it purportedly has published content that Google has crawled, scraped, or used.  *E.g.*,  *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 598-99 (7th Cir. 1995) (concluding that "[s]uppliers of rental space to grocery retailers … do not have the requisite direct injury to have standing to assert that [defendant] has monopolized … the retail grocery market" because the "devaluation" of their property by the alleged monopolist does not "present the type of anticompetitive injury that the antitrust laws were intended to remedy").  And Plaintiff cannot predicate antitrust standing on the notion that some alternative competitive dynamic in the alleged markets for general search services and search advertising purportedly would drive more traffic to its websites or otherwise bolster its business as a publisher.  *E.g.*, *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 319-21 (3d Cir. 2007) (dismissing Section 2 claim based on assertions that defendant "is using leverage over customers" in the alleged relevant market "to destroy the" adjacent line of business where plaintiff operates because plaintiff "does not allege that it sells goods in the same relevant market as [defendant]").

Accordingly, Count One of the Complaint should be dismissed for lack of antitrust standing.  *Aluminum Warehousing*, 833 F.3d at 157 ("[A]ntitrust standing is a threshold, pleading-stage inquiry and when a complaint by its terms fails to establish this requirement we must dismiss it as a matter of law.").

## B.    Plaintiff Has Not Adequately Alleged That Google Engaged in Exclusionary Conduct.

Even assuming, counterfactually, that Plaintiff had standing to assert Count One, the claim should be dismissed because it has failed to plead that Google engaged in "exclusionary

conduct" to maintain purported monopoly power in the alleged markets for general search services and search advertising.  This is an indispensable element of Plaintiff's claim, as "having a monopoly does not by itself violate § 2," and a "firm violates § 2 only when it acquires or maintains, or attempts to acquire or maintain, a monopoly by engaging in exclusionary conduct." *United States v. Microsoft Corp.*, 253 F.3d 34, 58 (D.C. Cir. 2001) (en banc).

Plaintiff's scattershot assertions of purportedly anticompetitive conduct—which range from the acquisition of a digital ads company in 2007 to an AI product launch in 2023—must each be evaluated separately to determine whether Plaintiff has satisfied its pleading obligations. *E.g.*, *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, 44 F.4th 959, 982 (10th Cir. 2022) (explaining that "courts disaggregate the exclusionary conduct into its component parts before applying the relevant law"); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 672 (D.C. Cir. 2005) (evaluating separately "five types of conduct" alleged to have violated the Sherman Act); *United States v. Google LLC*, 2023 WL 4999901, at *13 (D.D.C. Aug. 4, 2023) (rejecting plaintiffs' contention "that three different *types* of monopolistic conduct… must effectively be viewed as one in order to evaluate harm in the relevant markets").  Moreover, Plaintiff cannot overcome the deficiencies in its pleading by characterizing disparate conduct as "a 'monopoly broth' of acts and practices."  Compl. ¶ 217.  "Each legal theory must be examined for its sufficiency and applicability" because there is no sound basis for the proposition that "the degrees of support for each legal theory should be added up."  *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1367 (Fed. Cir. 1999); *see, e.g.*, *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 457 (2009) (declining plaintiffs' invitation "to join" two "claim[s] that cannot succeed, and alchemize them into a new form of antitrust liability" because "two wrong claims do not make one that is right"); *City of Groton v. Conn. Light & Power Co.*, 662 F.2d 921, 928-

29 (2d Cir. 1981) (explaining that a court must "analyze the various issues individually" under Section 2 even when they are purportedly "interrelated and interdependent," and "reject[ing] the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of … section 2 of the Sherman Act").

Plaintiff has not adequately pleaded that any of the assertions listed in its Complaint comprise exclusionary conduct.

*First*, Plaintiff's contention regarding Google "acquiring companies (such as DoubleClick, InviteMedia, AdMob, and AdMeld)" is not supported by sufficient factual allegations showing why these acquisitions were anticompetitive or had an anticompetitive effect in the alleged markets for general search services or search advertising.  Compl. ¶ 216(a). Plaintiff bears the "burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers *in the relevant market*."  *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018) (emphasis added); *see, e.g.*, *FTC v. Qualcomm Corp.*, 969 F.3d 974, 993 (9th Cir. 2020) ("[E]ven if [Defendant's] practices are interrelated, actual or alleged harms to customers and consumers outside the relevant markets are beyond the scope of antitrust law.").  Yet Plaintiff's own assertions regarding these acquisitions highlight the lack of a purported anticompetitive effect in the markets alleged in its Complaint.  For example, Plaintiff asserts that "Google's acquisition of DoubleClick in 2008 enabled it to dominate *digital display advertising* on Publishers' websites," InviteMedia "had *a demand si[d]e platform*," AdMob provided "a technology system that allows *publishers of mobile apps to sell ads*," and AdMeld "had a technology that provided 'yield management' functionality *to Publishers*."  Compl. ¶¶ 6, 64 (emphasis added).  The Complaint lacks non-conclusory allegations that any of these

acquisitions—which are facially unrelated to the alleged general search services and search advertising markets—had a substantial anticompetitive effect in those asserted relevant markets.

*Second*, as explained in Section III.A *supra* and Sections IV.A and VII.A *infra*, Plaintiff lacks standing to pursue a Section 2 claim predicated on allegations that Google entered agreements that "enable it to have the default internet search engine position on products of the other contracting party."  Compl. ¶ 216(b).[2]  Whatever effect those agreements have, they have no effect on Plaintiff and any injury asserted by Plaintiff is unrelated to Google's successful competition to win those default agreements.

*Third*, Plaintiff has not adequately alleged that Google used "monopoly profits to pay excessive amounts for those contracts."  *Id.* ¶ 216(c).  The Complaint simply lists alleged contractual figures and lacks factual allegations that the referenced revenue share agreements involve payments that are "excessive" in any legally cognizable sense, *i.e.*, that they are predatory overpayments rather than above-cost pricing, which is protected as a matter of law. *E.g.*, *linkLine*, 555 U.S. at 451-52 (affirming dismissal of Section 2 claim "where the defendant's retail price remains above cost"); *Microsoft*, 253 F.3d at 68 ("The rare case of price predation aside, the antitrust laws do not condemn even a monopolist for offering its product at an attractive price, and we therefore have no warrant to condemn Microsoft for offering either IE or the IEAK free of charge or even at a negative price.").

*Fourth*, Plaintiff likewise has failed to allege facts plausibly establishing an agreement that Apple would "abandon any potential for using Siri as a search engine," nor has Plaintiff pled facts establishing the requisite anticompetitive effect in the alleged markets for general search

---

[2] Google rejects any assertion that these agreements comprise exclusionary conduct, including for the reasons it presented at trial in *United States v. Google LLC*, No. 20-cv-3010-APM (D.D.C.).

services or search advertising.  Compl. ¶ 216(d).  As discussed in further detail in Section VII *infra*, the Complaint does not plausibly allege that a virtual assistant such as Siri is part of the asserted relevant markets or that Apple even planned to use "Siri as a search engine."  *Id.*; *see* Compl. ¶ 32 (alleging "[t]he general search services market … consists of 'general search engines, which are "one-stop shops" consumers can use to search the internet for answers to a wide range of queries").

*Fifth*, the Complaint fails to allege any anticompetitive effect from Google "exhorting Microsoft not to give itself default search engine status in updates of its operating system."  Compl. ¶ 216(e).  The sole assertion relating to this theory is a reference to a 2005 document, Compl. ¶ 79 n.52, which is unaccompanied by factual allegations that the request had any effect in unlawfully maintaining Google's alleged monopoly power in the alleged relevant markets.  Plaintiff does not even allege, for example, that Microsoft has refrained from setting its search engine as the default on "its operating system," whether on account of the referenced 2005 letter or for any other reason.  *See Microsoft*, 253 F.3d at 58 ("[T]o be condemned as exclusionary, a monopolist's act must have an 'anticompetitive effect.'  That is, it must harm the competitive *process* and thereby harm consumers.").

*Sixth*, the Complaint lacks any non-conclusory allegations of an anticompetitive effect in the alleged markets from purportedly "misappropriating the data off the websites of [Google's] Publisher customers without compensation to republish on its news and reference services."  Compl. ¶ 216(f).  As indicated, the Complaint does not allege that Plaintiff (or "Publishers" generally) are part of the asserted markets for general search services or search advertising that are the subject of its monopoly maintenance claim.  *See* Section III.A *supra*.  And, in any event, "antitrust claims are concerned not with wrongs directed against the private interest of an

individual business but with conduct that stifles competition." *E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc.*, 357 F.3d 1, 4 (1st Cir. 2004).

*Seventh*, for much the same reason, Plaintiff's assertion regarding "scraping the data off the websites of … Publisher customers without compensation" and "delaying for now any ability to avoid scraping of user/customer data through Bard" is not supported by allegations sufficient to plead any harm to competition among general search engines, whether as to search services or search advertising.  Compl. ¶ 216(g), (i).  Plaintiff's purported dissatisfaction with the way that Google allegedly used content published online—whether grounded in contract, copyright, or some other principle—is unconnected to any alleged "harm [to] the competitive *process*" in the asserted markets for general search services or search advertising.  *Microsoft*, 253 F.3d at 58; *see Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 69 (1st Cir. 2004) (explaining that "[s]ome antitrust cases are intrinsically hopeless because … they merely dress up in antitrust garb what is, at best, a business tort or contract violation").

*Eighth*, Plaintiff has not pleaded a claim through its contention that Google "introduce[ed] Bard without it being ready for use in an effort to undermine competition from Microsoft."  Compl. ¶ 216(h).  The law neither imposes a "readiness" standard on the launch of a product or service nor requires an alleged monopolist to refrain from launching a product or service in order to cede a field to a rival (*i.e.*, Microsoft) that is also active in the area.  To the contrary, "[a] monopolist, no less than any other competitor, is permitted and indeed encouraged to compete aggressively on the merits."  *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 797 F.2d 370, 375 (7th Cir. 1986).  And if Plaintiff's factually unsupported claim about "readiness" were accurate, that would make it easier for Microsoft and other search rivals to compete.  That does not qualify as an antitrust injury.  *E.g.*, *Sprint Nextel Corp. v. AT&T Inc.*, 821 F. Supp. 2d

308, 319-20 (D.D.C. 2011) (explaining that "[w]hen allegedly anticompetitive behavior 'has the effect of either raising market price or limiting output'" it does not cause "an injury-in-fact that *competitors* suffer" because such conduct "'actually *benefits* competitors'" (brackets omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 583 (1986)); *JTC Petroleum Co. v. Piasa Motor Fuels, Inc.*, 190 F.3d 775, 777-78 (7th Cir. 1999) (reasoning that a competitor lacks antitrust standing to challenge an allegedly anti-competitive agreement "to raise prices or … allocate customers or markets" because "[y]ou *want* your competitors to charge high prices").

*Ninth*, for the reasons indicated in each of the two preceding paragraphs, Plaintiff's observation that Google "introduc[ed] and implement[ed] SGE" (*i.e.*, the Search Generative Experience) is not a basis for Section 2 liability.  Compl. ¶ 216(j).  Plaintiff's allegations regarding SGE are unaccompanied by well-pled factual allegations of an anticompetitive effect in the alleged relevant markets for general search services and search advertising.  *See Am. Express*, 138 S. Ct. at 2284; *Qualcomm*, 969 F.3d at 993.  And even if the Complaint could be read to imply some purported effect on competitors, Plaintiff again has not alleged "harm to the competitive *process*" in the asserted markets from Google launching a new feature.  *Microsoft*, 253 F.3d at 58.

*Tenth*, Plaintiff's assertions regarding changes to "the manner in which [Google] charges Publishers … under AdSense" likewise fail to plead a substantial anticompetitive effect in the alleged markets.  Compl. ¶ 216(j).  The Complaint avers that "AdSense is a program designed for website publishers who want to display specific text, video or image advertising on pages of their website and make money when visitors to the site see or click on ads."  *Id.* ¶ 30 n.10.  Yet the Complaint lacks any non-conclusory allegation that a change in the way publishers are

compensated *for ads placed on their own websites* is "conduct which unfairly tends to destroy competition itself" in the alleged markets for general search services and search advertising—neither of which encompasses ads on publishers' websites according to Plaintiff's own definitions of the asserted markets. *Microsoft*, 253 F.3d at 58. In other words, as with most of the other forms of conduct addressed above, a generalized assertion of an alleged effect on the business model of certain publishers cannot serve as the requisite substantial effect on competition in the alleged markets for general search services or search advertising.

*Eleventh*, Plaintiff's allegations of "spoliating evidence" are inapt because it is not a cognizable form of exclusionary conduct under Section 2. Compl. ¶ 216(k). Whatever effect a plaintiff may contend that records retention should have on a particular judicial proceeding, the Complaint is devoid of non-conclusory allegations that it "harm[s] the competitive *process* and thereby harm[s] consumers." *Microsoft*, 253 F.3d at 58.

## IV. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR ATTEMPTED MONOPOLIZATION OF A MARKET FOR DIGITAL INFORMATION PUBLISHING (COUNT TWO).

Count Two alleges that Google "intentionally and unlawfully has attempted to monopolize the market for digital news and reference publishing" in violation of Section 2 of the Sherman Act. Compl. ¶ 222. It should be dismissed on any of several independent grounds.

### A. Plaintiff Lacks Standing.

To begin, the Complaint fails to specify whether it seeks to plead a "digital news and reference *publishing*" market or a "digital news and reference *search*" market, and it ultimately fails to plead either. While Count Two alleges that Google has "unlawfully attempted to monopolize the market for digital news and reference *publishing*," Compl. ¶¶ 222-23 (emphasis added), the section of the Complaint addressing "The Relevant Markets or Lines of Commerce at Issue" contains a section entitled "Google Possesses Dominant Position in the Line of Commerce

for Digital News and Reference *Searches*." *Id.* § V.B.3 (emphasis added).  Insofar as the Complaint is attempting to allege a relevant market for "digital news and reference *searches*," Plaintiff lacks antitrust standing because it does not allege that it is a participant in any such alleged search market.  *See* Section III.A *supra*.  Assuming that Count Two is instead predicated on an alleged market for "digital news and reference *publishing*," Plaintiff lacks antitrust standing even if the Complaint can be interpreted as alleging that Plaintiff participates in that asserted market because Plaintiff has not alleged a cognizable injury that flows from the alleged anticompetitive conduct.  *Brunswick*, 429 U.S. at 489 ("Plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful"); *see, e.g.*, *Andrx Pharms.*, 256 F.3d at 812 (explaining that "[t]he injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation," and "a competitor may not claim an injury resulting from competition even when such competition was actually caused by conduct that violates the antitrust laws" (internal quotation marks omitted)).

Count Two does not specify which form of allegedly anticompetitive conduct has injured Plaintiff in any respect, and the Complaint as a whole lacks allegations sufficient to make the connection.  With respect to the development and introduction of Bard and SGE, the Complaint does not plausibly allege what makes the conduct anticompetitive, let alone that Plaintiff has experienced the type of injury the antitrust laws were intended to prevent.  Plaintiff asserts that 0.0004% of the "tokens" that Google used to train certain large language models were from helena-arkansas.com.  Compl. ¶ 150.  This allegation fails to plead a form of exclusionary conduct under Section 2 of the Sherman Act, and it likewise fails to plead that Plaintiff has experienced a resulting antitrust injury.  Indeed, the Complaint avers that large language models

14

developed by other companies—none of which the Complaint alleges possess monopoly power or have engaged in conduct in violation of the antitrust laws—are trained on data compiled and used in the same manner.  *E.g.*, Compl. ¶ 148 (alleging that OpenAI's "ChatGPT[] was trained on datasets that included news, magazine and digital publications" and alleging generally that large language models (LLMs) "copy and use publisher content in generating outputs").  Because the Complaint does not adequately allege that any purportedly "illegal antitrust conduct was a necessary predicate to [plaintiff's] injury or that defendants could exclude [plaintiff] only by engaging in the antitrust violation, it [i]s appropriate to dismiss the [claim] pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Hodges v. WSM, Inc.*, 26 F.3d 36, 39 (6th Cir. 1994).

With respect to the remaining conduct alleged in the Complaint, Plaintiff does not even allege that it was injured in the sense required to establish Article III standing, let alone that it experienced an injury "that flows from that which makes [the conduct] unlawful" as it must to establish antitrust standing.  *Brunswick*, 429 U.S. at 489.  "To satisfy the injury-in-fact requirement" under Article III, the "plaintiff must show that his alleged injury was both concrete and particularized," and "in the class-action context, named plaintiffs 'must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Taylor v. Fed. Aviation Admin.*, 351 F. Supp. 3d 97, 102 (D.D.C. 2018); *see Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362, 1364 (D.C. Cir. 2012)  (reiterating that "[e]very plaintiff in federal court bears the burden of establishing the three elements that make up the 'irreducible constitutional minimum' of Article III standing" and rejecting the notion "that injury-in-fact in antitrust cases should be inferred").  In addressing entire categories of alleged conduct, however, the Complaint's allegations are framed entirely in terms of "Publishers" generally, without any well-pled

allegation that Plaintiff purportedly was injured.  For example, the Complaint makes assertions about acquisitions ranging from YouTube to Android and DoubleClick to AdMeld, but it is devoid of any allegation that these deals injured Plaintiff personally.  And the Complaint avers that in 2023 Google "changed the way it has charged Publishers for its AdSense advertising service," Compl. ¶ 179, but the Complaint does not allege that Plaintiff has experienced a concrete and particularized injury due to that change, or even that Plaintiff uses AdSense at all. *See, e.g.*, *Mulvey v. Am. Airlines Inc.*, 2019 WL 1060877, at *3-4 (D.D.C. Mar. 6, 2019) (concluding plaintiffs lacked both Article III and antitrust standing, and noting with respect to Article III that "[s]tanding 'is not dispensed in gross,' and the fact that other consumers purchased airline tickets [from defendants] is irrelevant to the [plaintiff's] lawsuit because 'each plaintiff must demonstrate that it has suffered injury in order to establish standing'").

The same fundamental defect afflicts Plaintiff's allegations relating to search defaults. *E.g.*, Compl. ¶ 216(b), (d)-(e).  The Complaint does not include any non-conclusory allegations that Plaintiff—as the owner of two local newspapers—has *personally* suffered an injury that is "fairly traceable to the challenged action" at issue.  *Amnesty Int'l*, 568 U.S. at 409; *see, e.g.*, *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008) (concluding consumer "lacked Article III standing to pursue a claim of price fixing" even though he purchased defendant's product because he "has not shown that he paid higher prices after the [challenged] agreement than he would have paid otherwise").  And even if some Article III injury could be gleaned from the Complaint, Plaintiff still lacks antitrust standing because any such injury does not flow from a theory that purportedly renders unlawful the conduct alleged (*e.g.*, an agreement to be the default search engine in a browser or the acquisition of a video-sharing site).  *See, e.g.*,

*Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 173 (3d Cir. 2015)

("[H]arm that is secondary to the anticompetitive conduct cannot support antitrust injury.").

### B.       Plaintiff Has Not Adequately Pleaded a Relevant Market.

Even if Plaintiff had standing, Count Two should be dismissed because in order to plead

attempted monopolization under Section 2, "the plaintiff must plead facts sufficient to establish

the existence of a relevant market and the defendant's power in that market." *Dial A Car, Inc. v.*

*Transp., Inc.*, 884 F. Supp. 584, 589-90 (D.D.C. 1995).  Plaintiff has failed to do so.

Specifically, Plaintiff "bears the burden of establishing the relevant market," "which

traditionally has two components: the product market and the geographic market." *Sky Angel*

*U.S., LLC v. Nat'l Cable Satellite Corp.,* 947 F. Supp. 2d 88, 102 (D.D.C. 2013).  Allegations of

a relevant product market "the confines of which are only somewhat fleshed out and the players

within which remain almost entirely unspecified . . . is not enough." *FTC v. Facebook, Inc.*, 560

F. Supp. 3d 1, 20 (D.D.C. 2021).  In addition, because "[t]he outer boundaries of a product

market are determined by the reasonable interchangeability of use or the cross-elasticity of

demand between the product itself and substitutes for it," "[f]ailure to define the market by

reference to the reasonable interchangeability—or lack thereof—of services is valid ground for

dismissal at the Rule 12(b)(6) stage." *Sky Angel*, 947 F. Supp. 2d at 103.  The Complaint falls

far short of the required standard.

For example, Plaintiff apparently alleges that a market for "digital news and reference

publishing" includes "digital magazines and newspapers, encyclopedias, wiki, blogs, news

aggregators, news search platforms, and digests."  Compl. ¶ 47.  Yet when the Complaint cites a

figure stating that "digital news publishing revenue is expected to exceed $27 billion by 2027,"

Ex. A at 1, that $27 billion includes eBooks as "the segment . . . stand[ing] out with the highest

17

value" at "15.3 billion U.S. dollars," Ex. B at 3.[3]  The Complaint does not include any

allegations concerning whether Plaintiff intends to include eBooks within its asserted relevant

market, much less any allegations regarding interchangeability of eBooks with other alleged

categories of "digital news and reference publishing."  *E.g.*, *Sky Angel*, 947 F. Supp. 2d at 103

("'If it is not clear whether a product is interchangeable with others, then some detail about lack

of interchangeability should be given' in the complaint.").

  Plaintiff also fails to plausibly allege why other forms of informational content should be

excluded.  Plaintiff appears to allege that Google's "display[] [of] news digests and reference

content" includes, for example, "Google Discover (recommended social feed)," and "Google

Bard (chatbot summarizing news articles and answering information queries)."  Compl. ¶ 54.  By

the same logic, however, any alleged relevant market that includes these Google services would

also include the "recommended social feed" of a broad array of services such as Facebook,

Instagram, X (*i.e.*, Twitter), and TikTok, as well as the "chatbot summarizing news articles and

answering information queries" of many new services including OpenAI's ChatGPT and

Microsoft's CoPilot.  Yet the relevant market allegations gloss over these various forms of

publication of informational content referenced in the Complaint and fail to plausibly allege why

they should not be included within the alleged relevant market.  This is a fatal flaw of Plaintiff's

attempted monopolization claim.  *E.g.*, *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir.

2018) ("[A] complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant

---

[3] Paragraph 47 of the Complaint cites a webpage (https://www.statista.com/topics/1453/digital-publishing/#topicOverview), which states that "[d]igital publishing revenue in the United States will continue to grow and is expected to amount to over 27 billion U.S. dollars by 2027."  Ex. A at 1.  The underlined portion of the statement is hyperlinked to another Statista webpage (https://www.statista.com/forecasts/456813/epublishing-revenue-in-the-world-forecast), which states that "the segment eBooks stands out with the highest value of 15.3 billion U.S. dollars." Ex. B at 3.

market' definition is facially unsustainable.").

The Complaint fares no better if it is interpreted as attempting unsuccessfully to allege a market for "digital news and reference *searches*" instead of "digital news and reference *publishing*." Again, the Complaint lacks allegations sufficient to define the parameters of any such asserted market "by reference to the reasonable interchangeability—or lack thereof." *Sky Angel*, 947 F. Supp. 2d at 103. For example, the Complaint alleges that "[n]ews search" is one "source of external referral traffic to news websites," with other sources including "social media and direct traffic." Compl. ¶ 46. And Plaintiff's own cited source indicates that "[t]he share of [publisher] page views from social networks" *exceeded* that from search engines in 2019, and has remained a significant source of news site page views. Ex. C (quoted in Compl. ¶ 46 n.31). Plaintiff fails to plausibly allege what a market for "digital news and reference *searches*" would encompass, and its attempted monopolization claim accordingly must be dismissed. *Am. Express*, 138 S. Ct. at 2285 ("Without a definition of the market there is no way to measure the defendant's ability to lessen or destroy competition." (brackets omitted)).

Finally, the relevant market allegations relating to Count Two lack any reference to a relevant geographic market, in contrast to Plaintiff's allegations concerning the "relevant geographic scope" of the general search services market at issue in Count One. Compl. ¶ 34. This omission, by itself, requires dismissal of the attempted monopolization claim. *E.g.*, *Sky Angel*, 947 F. Supp. 2d at 104 ("The relevant geographic market must be sufficiently defined so that the Court understands in which part of the country competition is threatened.").

### C.   Plaintiff Has Not Adequately Pleaded a Dangerous Probability of Success in Monopolizing the Relevant Market.

"To establish a § 2 violation for attempted monopolization, 'a plaintiff must prove (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent

to monopolize and (3) a dangerous probability of achieving monopoly power." *Microsoft*, 253

F.3d at 80.  Even assuming, counterfactually, that the Complaint adequately alleged a relevant

market for "digital news and reference publishing" (or "digital news and reference search"),

Plaintiff has not pleaded that Google possesses "a dangerous probability of success in actually

monopolizing the relevant market." *E.g.*, *Dial A Car*, 884 F. Supp. at 589.

      The Complaint lacks, among other things, non-conclusory allegations regarding market

shares in the asserted market that is the subject of Count Two.  *E.g.*, *Tarabishi v. McAlester*

*Regional Hosp.*, 951 F.2d 1558, 1569 (10th Cir. 1991) (explaining that "the plaintiff must show

that there was a dangerous probability the defendant would achieve monopoly status as the result

of the predatory conduct alleged by the plaintiff," which "is typically done by examining the

defendant's market share in the relevant market").  Moreover, the very source cited in Plaintiff's

Complaint indicates that Google News was only "the 16th most popular news site in the world,"

Compl. ¶ 48, with Yahoo, The New York Times, CNN, Fox News, and MSN.com leading the

ranking of news sites.  Ex. D (cited in Compl. ¶ 48 n.39).  In the absence of allegations of a

sufficiently high market share—which "is the primary indicator of the existence of a dangerous

probability of success"—or other specific allegations indicating that Google has "a dangerous

probability of achieving monopoly power" in the relevant market alleged in Count Two, that

count should be dismissed.  *RxUSA Wholseale, Inc. v. Alcon Labs., Inc.*, 661 F. Supp. 2d 218,

241 (E.D.N.Y. 2009); *see, e.g.*, *M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*,

981 F.2d 160, 168 (4th Cir. 1992) (en banc) (describing "a general scale" for attempted

monopolization claims whereby "claims of less than 30% market shares should presumptively be

rejected" and "claims involving between 30% and 50% shares should usually be rejected"); *Barr*

*Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992) (concluding "that [defendant] did not

have a reasonable probability of successfully monopolizing the" alleged relevant market "despite [defendant's] approximate 50% market share").

      **D.**      **Plaintiff Has Not Adequately Alleged That Google Engaged in Exclusionary Conduct.**

In addition to the above shortcomings, the Complaint also does not plausibly allege that Google "attempt[ed] to acquire … a monopoly by engaging in exclusionary conduct." *Microsoft*, 253 F.3d at 58.  Moreover, the Complaint fails to adequately plead facts plausibly demonstrating that any such conduct had a substantial anticompetitive effect that harms consumers *in the relevant market*."  *Am. Express*, 138 S. Ct. at 2284 (emphasis added).

As explained above in the context of Count One, the alleged conduct does not constitute exclusionary conduct proscribed by the antitrust laws and therefore cannot support the attempted monopolization claim asserted in Count Two.  Moreover, Plaintiff's attempt to piggyback on certain allegations made in *United States v. Google LLC*, No. 20-cv-3010-APM, fails for the additional reason that it does not bear any relationship to, much less have an anticompetitive effect in, the relevant market alleged in Count Two.  The Complaint lacks non-conclusory allegations that conduct such as entering agreements to be the default search engine or purportedly "requiring Apple to abandon any potential for using Siri as a search engine" (Compl. ¶ 216) have a substantial anticompetitive effect in the asserted market for "digital news and reference publishing" (or "digital news and reference search").  For all of these reasons, Count Two should be dismissed.

**V.**      **PLAINTIFF HAS NOT PLEADED A VIOLATION OF SECTION 7 OF THE CLAYTON ACT (COUNT THREE).**

The third count of Plaintiff's Complaint asserts a violation of Section 7 of the Clayton Act, "which prohibits mergers that may 'substantially … lessen competition, or … tend to create a monopoly.'"  *New York v. Meta Platforms, Inc.*, 66 F.4th 288, 295 (D.C. Cir. 2023) (quoting 15

U.S.C. § 18) (ellipses in original).  Count Three, like the other counts, should be dismissed on a number of independent grounds.

### A.  Plaintiff Has Not Pleaded a Relevant Market and Lacks Standing in Any Event.

The same defects that are fatal to Plaintiff's attempt to predicate liability for various long-ago mergers in Counts One and Two of the Complaint warrant dismissal of Count Three.  Among other things, the Count should be dismissed for lack of standing, which likewise is a prerequisite to a claim under Section 7 of the Clayton Act.  *E.g.*, *Brunswick*, 429 U.S. at 489 (articulating the antitrust injury requirement in the context of a Section 7 claim); *see* Sections III.A and IV.A *supra* and Sections VI.A and VI.A *infra*.  In addition, Plaintiff has not specifically identified any relevant market in connection with Count Three, which by itself warrants dismissal because "a plaintiff must allege a plausible relevant market in which competition will be impaired" in order "[t]o state a claim under § 7 of the Clayton Act."  *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011).  Insofar as Count Three is interpreted as implicitly attempting to plead a relevant market for "digital news and reference publishing" or "digital news and reference search," it should be dismissed for all of the reasons stated in Section IV *supra*.

### B.  The Claim Is Time Barred.

Alternatively, Count Three is barred by the statute of limitations and the doctrine of laches.  The count specifically identifies acquisitions of six companies—YouTube, Android, DoubleClick, InviteMedia, AdMob, AdMeld—that occurred between 2005 and 2011.  Compl. ¶ 228; *see id.* ¶¶ 60, 62-64.  The most recent acquisition of any kind referenced in the Complaint is "Google's acquisition of AI firm DeepMind Technologies, in 2014."  *Id.* ¶ 61.  The time for

Plaintiff to pursue a claim predicated on any of these acquisitions elapsed many years before it filed the Complaint in December 2023.

Insofar as the third count seeks damages (*see* Compl. ¶ 230), it is untimely because "[a] Section 7 cause of action challenging an acquisition accrues at the time of the merger or acquisition, and there is a four-year statute of limitations" established by 15 U.S.C. § 15b. *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594, 597, 604 (6th Cir. 2014) (affirming dismissal of Clayton Act Section 7 claim filed "approximately five years and three months" after the acquisition at issue); *see also Meta*, 66 F.4th at 299 (explaining that the plaintiffs' Section 7 "causes of action accrued in 2012 when Facebook acquired Instagram and in 2014 when Facebook acquired WhatsApp").

To the extent that Count III seeks "injunctive relief and other equitable remedies" (Compl. ¶ 229), it is barred by the doctrine of laches, which "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Meta*, 66 F.4th at 295. With respect to the first element, "delay in laches is measured by the length of time 'between accrual of the claim and suit'" and may use the aforementioned "four-year statute of limitations for damage actions (15 U.S.C. § 15b) as a 'guideline' for determining what amounts to undue delay." *Id.* at 299-300.

There is no question that Plaintiff unduly delayed bringing suit regarding acquisitions that occurred approximately a decade ago at a minimum, and in some cases more than 15 years ago. Compl. ¶¶ 60-64; *see Meta*, 66 F.4th at 293, 295, 301 (affirming dismissal on laches grounds of a Clayton Act claim filed in December 2020 regarding acquisitions occurring "between 2012 and 2016"). It is also beyond dispute that the delay is a source of prejudice "[f]or laches purposes." *Meta*, 66 F.4th at 300. For example, the Complaint alleges that the 2014 acquisition of

DeepMind's artificial intelligence technology "enabled Google to further refine its search engine algorithm," the 2007 DoubleClick acquisition resulted in "'effectively combining information' … from various Google products," and the 2005 Android acquisition led to Google developing Android into the "operating system running on 75% of the world's mobile devices."  Compl. ¶¶ 61-63.  That Google has for years "made business decisions and allocated firm resources based on holding" the acquired companies confirms that prejudice would result from Plaintiff's attempt to seek equitable relief following its undue delay in bringing suit.  *Meta*, 66 F.4th at 301 (affirming finding of prejudice from delay in challenging Facebook's acquisitions where the complaint alleged Facebook had been "working to 'integrate' Instagram" and "'combined' WhatsApp data 'across all Facebook products'").

### C.     Plaintiff Has Not Adequately Pleaded Other Conduct That Is Actionable under Section 7 of the Clayton Act.

Plaintiff cannot salvage Count III by asserting that "Google has violated Section 7 of the Clayton Act" by "entering into agreements … such as the 'Apple Inc. Search Partnership'" or "implementing SGE."  Compl. ¶ 228.  These allegations are not a basis for potential liability under Section 7 of the Clayton Act, which is titled "Acquisition by one corporation of stock of another" and requires, among other things, that the defendant "acquire … the whole or any part of the stock or other share capital … or any part of the assets of another person."  15 U.S.C. § 18. The long-standing agreements "to make Google the default search engine" (Compl. ¶ 76) that Plaintiff references are not mergers, asset purchase agreements, or any other form of agreement that entails Google "acquir[ing]" the "stock" or "other assets" of counterparties such as Apple, Mozilla, or Samsung.  *See, e.g.*, *United States v. Bertelsmann SE & Co.*, 646 F. Supp. 3d 1, 21-22 (D.D.C. 2022) (explaining that "Section 7 of the Clayton Act prohibits [certain] mergers and acquisitions," and "[t]he fundamental purpose of Section 7 is to arrest the trend toward

concentration, the tendency to monopoly or monopsony, before the buyer's or seller's alternatives disappear through merger" (brackets and quotation marks omitted)).  The implementation of SGE, meanwhile, refers to a search feature introduced on a limited basis in "May of 2023" that Plaintiff characterizes as "generat[ing] natural-language summaries to answer users' queries."  Compl. ¶¶ 169-70.  The unilateral development of a product or service likewise does not fall within the statute's ambit and provides no plausible basis for liability under Section 7.[4]

## VI.   PLAINTIFF HAS NOT PLEADED AN UNLAWFUL TYING ARRANGEMENT (COUNT FOUR).

Count Four of the Complaint alleges two distinct forms of unlawful tying.  The first is a purported tie of (i) Google's "general search services" to (ii) "Google's digital news and reference products."  Compl. ¶¶ 233-34.  The Complaint's section entitled "Tying" defines "Google's digital news and reference products" as the "news and reference content" that appears on Google's search results page in response to a user's query.  *E.g.*, *id.* ¶ 125 ("When a user searches for information on Google, buying Google's search service is conditioned on also buying Google's re-published news and reference content.").  The second form of alleged tying involves (i) search advertising and (ii) "Google's revised AdSense program."  *Id.* ¶ 235.  The Complaint defines AdSense as "a program for website publishers who want to display specific text, video or image advertising on pages of their website and make money when visitors to the site see or click on ads."  *Id.* ¶ 30 n.10.  For several independent reasons, Plaintiff has failed to

---

[4] Even if Plaintiff could pursue a Section 7 claim without running afoul of the statute's text and purpose, it has not adequately pleaded an anticompetitive effect from the conduct alleged in Count Three, namely certain acquisitions (e.g., of YouTube and DoubleClick), the "Apple Inc. Search Partnership," or "implementing SGE."  *See, e.g.*, Sections III.B and IV.D *supra*.

state a claim for relief with respect to each form of alleged tying, and Count Four should be dismissed.

### A.    Plaintiff Lacks Standing.

The Complaint asserts in conclusory fashion that "Plaintiff and Class Members paid excessive amounts for the tied products that would have been less but for Google's conduct." *Id.* ¶ 240.  But that is not enough for Plaintiff to carry its burden to establish it has Article III standing. *Defs. of Wildlife*, 504 U.S. at 560-61.  With respect to the alleged tie of "Google's digital news and reference products," Plaintiff does not allege facts showing that it paid any amounts at all to use any of these "products," which indisputably are made available to users for free.  And with respect to the other asserted tie, the Complaint does not allege facts showing that Plaintiff has used the "revised AdSense program," Compl. ¶ 235, let alone that it has paid more than it purportedly should have in a way that is fairly traceable to any alleged tying arrangement. *See Taylor*, 351 F. Supp. 3d at 102.

Furthermore, to the extent that Plaintiff's theory regarding "digital news and reference products" is predicated on a purported injury involving Google crawling "Publisher's" websites and showing results to Google's users, Plaintiff has not alleged antitrust injury, as discussed in Section IV.A *supra*.  Insofar as the Complaint can be construed as alleging any injury at all, it is a generalized assertion that "Publishers" want Google to crawl their websites so that they receive "search-referral traffic," Compl. ¶ 111, but they do not want Google to display other content that might "fully answer the user's question." *Id.* ¶ 124.  That is not an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489.  The Complaint expressly characterizes "Publishers as input suppliers" with regard to the alleged "tying arrangements," Compl. ¶ 3, but "[a] supplier does not suffer an antitrust injury when competition is reduced in the downstream market in

which it sells goods or services." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85,

102 (3d Cir. 2010).  And even when evaluating a tying claim, courts have rejected the notion that

a supplier or competitor experiences an antitrust injury when an alleged change in the

defendants' manner of doing business purportedly results in an "economic injury."  *E.g.*, *Valley

Prods. Co. v. Landmark, a Div. of Hospitality Franchise Sys., Inc.*, 128 F.3d 398, 400, 403-04

(6th Cir. 1997) (affirming dismissal of a tying claim predicated on defendants' decision to

withdraw plaintiff's permission to use a valuable trademark and to license it exclusively to

plaintiff's competitors).

Plaintiff has not established that it possesses Article III or antirust standing to pursue a

tying claim, and Count IV therefore should be dismissed.

**B.      Plaintiff Has Not Pleaded a Tying Claim with Regard to "Digital News and
          Reference Products."**

Even assuming, counterfactually, that Plaintiff has standing, it has still failed to state a

claim for relief with regard to its first tying theory—*i.e.*, that Google forces users of its "general

search services" to also use "Google's digital news and reference products"—because it has not

plausibly alleged that "the tying and tied goods are two separate products."  *Microsoft*, 254 F.3d

at 85.  The Complaint's assertions regarding tying allege that "Google's digital news and

reference products" consist of the material that Google displays to users on the search results

page in response to queries relating to "news" or "reference" topics.  *E.g.*, Compl. ¶¶ 4, 123.

That is not a "separate product" from Google's "general search services" to which it is

purportedly tied, but rather the response to the query delivered by Google Search, which the

Complaint characterizes in terms of its ability to "answer all types of queries and return a wide

range of results."  *Id.* ¶ 32.

"[T]he answer to the question whether one or two products are involved turns … on the character of the demand for the two items." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 19 (1984).  The Complaint does not allege that general search engine users want separate search engines—one for general search queries and a different one for news or reference topic queries, and any such notion would be wholly implausible as Google Search frequently offers various types of search results for the same query.  Moreover, the Complaint does not allege that other general search services—including those that Plaintiff does not contend possess market power—somehow separate into distinct products users' queries for "news" or "reference" topics.  *E.g.*, *Kaufman v. Time Warner*, 836 F.3d 137, 145 (2d Cir. 2016) (affirming dismissal of claim that defendant tied the sale of cable set-top boxes to its provision of cable television services where complaint failed to allege that the products were purchased separately "even in markets where cable providers are in competition with each other or with fiber optic cable services that employ different technology").  In short, the results delivered by Google Search *are* the alleged "general search services" that can include news and reference topic information depending on the query, not a separate product that is tied to a subset of search services.[5]

Moreover, even if Plaintiff had adequately alleged the existence of two separate products, its tying claim would fail because it has not adequately alleged that Google "affords consumers no choice but to purchase the tied product from it."  *Microsoft*, 253 F.3d at 85; *see Jefferson Parish*, 466 U.S. at 12 ("[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase

---

[5] "The failure to plausibly allege separate products" is fatal to a tying claim regardless whether it is alleged to be a *per se* violation or subject to the rule of reason.  *Kenney v. Am. Bd. of Internal Medicine*, 847 F. App'x 137, 145 (3d Cir. 2021).

elsewhere on different terms.").  Plaintiff's claim is predicated on the existence of an alleged

"general search services market" consisting of general search engines that "consumers can use to

search the internet for answers to a wide range of queries."  Compl. ¶ 32.  The Complaint does

not allege that in order to use Google Search for non-news and reference queries, the user is

required to enter queries for "news" or "reference" topics or to consume any resulting "digital

news and reference products."  Nor could the Complaint make any such allegation, given that a

Google Search user can enter whichever queries they want at no cost while acquiring their

"digital news and reference products" primarily or exclusively from other sources, ranging from

newspapers to magazines, and Facebook to X (*i.e.*, Twitter).  *E.g.*, *Athos Overseas, Ltd. v.

YouTube, Inc.*, 2022 WL 910272, at *3 (S.D. Fla. Mar 29, 2022) (explaining that "the plaintiff

must establish that the seller *forced* or *coerced* the buyer into purchasing the tied product" and

concluding that where the allegedly tied product "is a free service offered by Defendants,

Plaintiff's claim must fail because the acceptance of a free service does not constitute an

impermissible tie-in").[6]

### C.    Plaintiff Has Not Pleaded a Tying Claim with Regard to "Google's Revised AdSense Program."

Plaintiff's second tying theory—*i.e.*, that Google has tied its "search advertising" to its

"revised AdSense program"—likewise fails to state a claim for relief.  The Complaint does not

plausibly allege that Google has even bundled two services together in any cognizable sense, let

alone that it has tied them in a way that involves a purported "exploitation of its control over"

search advertising "to force the buyer into the purchase of" AdSense even though "the buyer

---

[6] This defect is also fatal to Plaintiff's tying claim regardless whether it attempts to frame the theory as a *per se* violation or one subject to the rule of reason.  *E.g.*, *Marchese v. Cablevision Sys. Corp.*, 2011 WL 149917, at *4 (D. N.J. Jan. 14, 2011).

either did not want [AdSense] at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish*, 466 U.S. at 12.

The buyers of search advertising are businesses that want their ads to appear on Google's search results page in response to user queries. *See* Compl. ¶ 38. Plaintiff has not plausibly alleged that buyers of search ads are forced in any way to use AdSense for Content, which is an altogether different product that enables website owners to make money by *selling* ad space on their sites. Compl. ¶¶ 30 n.10, 179 (alleging that AdSense "enable[s] Publishers to sell display space to advertisers on their websites"). The buyer of a search ad on google.com does not need to use AdSense for Content at all, and indeed would not do so unless it separately wanted to sell ad space on its own website to generate revenue. *See id.*; *see, e.g.*, *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016) (explaining that "[a] tie only exists where 'the defendant improperly imposes conditions that explicitly or practically require buyers to take the second product if they want the first one,'" and concluding the plaintiff's claim does not qualify "because there is no condition linked to a sale"). In any event, the Complaint lacks non-conclusory allegations that businesses who elect to purchase search ads on Google Search must also use Google AdSense to sell display advertising space on their website. *E.g.*, *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1103 (W.D. Wash. 2014) (rejecting tying claim where plaintiff "nowhere alleges or offers evidence to prove that he was actually forced to purchase" the tied product and noting "[t]his shortcoming is fatal, as courts and commentators have long recognized that actual coercion by the seller that in fact forces the buyer to purchase the tied product is an indispens[a]ble element of a tying violation." (brackets and quotation marks omitted)).

**D.      Plaintiff Has Not Adequately Alleged That Competition Was Harmed in the Tied Markets.**

Even if Count Four were not saddled with all of the fatal deficiencies described above, it should still be dismissed because Plaintiff has failed to plausibly allege harm to competition in the tied markets.  That begins with its failure to adequately allege a relevant market at all.  As discussed in Section IV.B *supra*, Plaintiff has not pleaded a relevant "digital news and reference publishing" market.  With regard to the second tying theory, the Complaint does not include any allegations about the relevant market in which AdSense purportedly resides, which again warrants dismissal.  *E.g.*, *Teradata Corp. v. SAP SE*, 570 F. Supp. 3d 810, 851 (N.D. Cal. 2021) ("[B]ecause [Plaintiff] has failed to properly define a tied market, there is no triable issue of fact whether the alleged tying arrangement harmed competition in the tied market under the rule of reason analysis.").

Finally, in addition to failing to plead a relevant market for the tied products in which any purported harm to competition should be measured, the Complaint lacks factual matter sufficient to plead a purported harm to competition.  *See In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 997 (N.D. Cal. 2010) ("Conclusory allegations of anticompetitive effect are insufficient without supporting facts as to how competition in the tied markets has actually been reduced or harmed.").  Although the Complaint makes certain general assertions about what it calls "traditional print media," Compl. ¶¶ 91-140, it does not plausibly allege facts demonstrating that any purported tie has harmed *competition* in any alleged relevant market.  *E.g.*, *In re Cox Enters., Inc.*, 871 F.3d 1093, 1108 (10th Cir. 2017) ("Plaintiffs failed to show that [defendant's] tie, as opposed to consumer choice, defeated these products or kept their manufacturers from selling them.").  And with respect to the separate theory concerning the "revised AdSense program," the

Complaint lacks any non-conclusory allegations about the effect on competition in the (entirely undefined) market in which AdSense competes.

For any or all of these reasons, Count Four should be dismissed.

## VII.   PLAINTIFF HAS NOT PLEADED AN UNLAWFUL AGREEMENT BETWEEN GOOGLE AND APPLE (COUNT FIVE).

In Count Five, Plaintiff claims that Google and Apple's renewal in 2016 of the Information Services Agreement ("ISA")—an agreement first signed in 2002 under which Apple makes Google Search the default search engine on Apple's Safari web browser software—was "unlawful *per se* . . . or is otherwise an unreasonable restraint of trade" in violation of Sections 1 and 3 of the Sherman Act.  Compl. ¶ 245.  The claim is based on a conclusory—and inaccurate—assertion that in 2016 Apple "shelve[d]" a "plan" "to use Siri as a form of search engine" in exchange for continuing to receive revenue share payments from Google.  *Id.* ¶¶ 244-45.

Count Five should be dismissed on a number of grounds.  For one, Plaintiff has alleged no cognizable injury at all, let alone an antitrust injury, arising from this alleged conduct and it therefore does not have standing to assert a claim predicated on the 2016 ISA Amendment.  For another, the 2016 ISA Amendment—a vertical supply agreement—is not subject to *per se* scrutiny as a matter of law.  Finally, the Complaint lacks plausible allegations to support a rule of reason claim under Sections 1 and 3 of the Sherman Act.

### A.   Plaintiff Lacks Standing.

Count Five should be dismissed because the Complaint does not allege factual matter sufficient to plead that Plaintiff experienced a "concrete, particularized" injury that is "fairly traceable" to the 2016 ISA Amendment.  *Amnesty Int'l*, 568 U.S. at 409.  The sole paragraphs of the Complaint that address Plaintiff's theory of the 2016 ISA Amendment and Siri say nothing

about Plaintiff, Compl. ¶¶ 81, 244-45, and the remainder of the Complaint likewise fails to allege

how the company personally was injured by the purported conduct.  *See Jibril v. Mayorkas*, 20

F.4th 804, 813-14 (D.C. Cir. 2021) (explaining that "the plaintiff must have a 'personal stake' in

the case" and "must demonstrate standing for each claim that is being pressed and for each form

of relief that is being sought").  The boilerplate assertion that "Plaintiff and Class members paid

excessive amounts for Google's services that would have been less but for this conduct" cannot

possibly suffice, particularly given that Google does not charge users for use of its search engine,

and Plaintiff has not alleged that it pays for any of "Google's services."  Compl. ¶ 246.  "Such

conclusory proclamations are not the kind of clear allegations of fact necessary to establish an

injury in fact, even at the motion to dismiss stage."  *Taylor*, 351 F. Supp. 3d at 103.

Even if Plaintiff could plead its way past the Article III threshold, however, it would not

be able to establish antitrust standing.  *See Andrx*, 256 F.3d at 812 (explaining that "[a] private

antitrust plaintiff does not acquire standing merely by showing that it was injured in a proximate

and reasonably measurable way by conduct of the defendant violating the antitrust laws (injury-

in-fact)" and that it is also not "enough that the injury be causally connected to the acts that

violate the antitrust laws (causation)").  As discussed in Section III.A *supra*, Plaintiff lacks

antitrust standing because it does not participate in the general search services market in which

competition purportedly was restrained, nor has it pleaded some unique injury connected to that

alleged market.[7]  Thus, while Count Five should be dismissed on the ground that Plaintiff has not

---

[7] Plaintiff does not expressly allege a relevant market in connection with Count Five, which is a
reason in and of itself to dismiss the count because "[u]ntil a market's parameters are reasonably
well defined, a court cannot know whether a defendant has unreasonably restricted trade in that
market," and it "is the plaintiff's burden to define the relevant market."  *Gross v. Wright*, 185 F.
Supp. 3d 39, 49-50 (D.D.C. 2016).  As the accompanying allegations indicate, however, general
search services is the only alleged market conceivably relevant to the claim.  Compl. ¶¶ 81, 244
(alleging the 2016 ISA Amendment "restrained trade between Google and a potential

met the requirements of constitutional standing, it is also apparent that the mandatory

determination of "whether the plaintiff is a proper party to bring a private antitrust action"

dictates dismissal.  *Johnson*, 869 F.3d at 981; *see, e.g.*, *Fotobom Media*, ECF No. 27 at 6

(concluding "that Plaintiff lacks antitrust standing to pursue claims with respect to the market for

general search services").

> **B.** **The Complaint Fails to Allege a Sherman Act Violation under Either the *Per Se* Rule or the Rule of Reason.**

Even if Plaintiff had standing to assert Count Five (which again it does not), the

contention that the 2016 ISA Amendment "was unlawful *per se*" would be foreclosed as a matter

of law.  As the Supreme Court has cautioned, "the *per se* rule is appropriate only after courts

have had considerable experience with the type of restraint at issue, and only if courts can predict

with confidence that it would be invalidated in all or almost all instances under the rule of

reason."  *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886-87 (2007)

(internal citations omitted); *see Meijer, Inc. v. Barr Pharms., Inc.*, 572 F. Supp. 2d 38, 47

(D.D.C. 2008) ("This *per se* rule is reserved for only those agreements that are so plainly

anticompetitive that no elaborate study of the industry is needed to establish their illegality."

(internal quotation marks omitted)).  Indeed, "almost all vertical agreements—agreements

between firms at different levels in the chain of distribution—must be analyzed under the rule of

reason."  *In re McCormick & Co.*, 217 F. Supp. 3d 124, 134-35 (D.D.C. 2016).  The Complaint

alleges that the 2016 ISA Amendment is "an agreement with Apple to make Google the default

search engine on Apple's mobile and web browsers," Compl. ¶ 76—a paradigmatic example of a

vertical agreement "between firms at different levels in the chain of distribution."  *McCormick*,

---

competitor" based on a purported "possibility that Apple might wish to use Siri as a form of
search engine").

217 F. Supp. 3d at 135; *see Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 730 (1988). Accordingly, the conclusory assertion that the 2016 ISA Amendment "was unlawful *per se*" is facially unsupported by well-pleaded factual allegations.

The 2016 ISA Amendment would not be subject to the *per se* rule even assuming, counterfactually, that the agreement contained a provision through which Google purportedly required Apple to "shelve" its "plan" "to use Siri as a form of search engine."  Compl. ¶¶ 244-45. A vertical agreement that contains elements of horizontal restraints is still *not* subject to the *per se* rule because "the law does not allow a party to simply isolate one particular provision or restraint within an overall agreement and argue, in isolation, that the restraint is subject to *per se* condemnation."  *Meijer*, 572 F. Supp. 2d at 49 (explaining "[t]hat improvident approach has been foreclosed by Supreme Court cases admonishing lower courts to avoid forcing conduct into a particular 'category' and applying the *per se* rule").  In other words, the general inapplicability of the *per se* rule to a vertical agreement holds true even if "aspects of the restraint may appear to be facially anticompetitive" or if the agreement's contracting parties are "actual or potential competitors."  *Id.* at 51-52.

Plaintiff has not pleaded a claim under the rule of reason, which requires "a plaintiff to … demonstrate that the restraint is likely to have anticompetitive effects—that is, 'to impair competition by creating, increasing, or maintaining that market power or by facilitating its exercise, or by otherwise harming consumers.'"  *McCormick*, 217 F. Supp. 3d at 137.  The boilerplate assertion that the 2016 ISA Amendment is "an unreasonable restraint of trade" that resulted in payment of "excessive amounts for Google's services" is inadequate.  Compl. ¶¶ 245-46.  As indicated, the allegation is facially implausible because Google does not charge users to use its search engine at all, and, in any event, "[c]onclusory allegations of supracompetitive

prices are not sufficient." *McCormick*, 217 F. Supp. 3d at 137 (dismissing complaint alleging

that "[p]rices for pepper sold by McCormick and its co-conspirators have been fixed, raised,

maintained, and stabilized at artificially high, non-competitive levels").

> **C.      Plaintiff's Conclusory Assertion that Google Caused Apple to "Shelve" Its "Plan" To "Use Siri as a Form of Search Engine" Is Not Plausibly Supported by the Facts Pled.**

Count Five should also be dismissed on the independent ground that the allegation

underpinning the claim—*i.e.*, that the 2016 ISA Amendment constitutes an agreement between

Google and Apple that Apple will not transform Siri into a search engine—is not plausibly

supported by any well-pled facts in the Complaint.  Compl. ¶¶ 244-45; *see Twombly*, 550 U.S. at

556 (holding that "[f]actual allegations must be enough to raise a right to relief above the

speculative level"); *Hemp Indus. Assoc. v. DEA*, 36 F.4th 278, 288 (D.C. Cir. 2022)

("[C]onstruing a complaint liberally in the plaintiff's favor does not entail accepting inferences

unsupported by facts or legal conclusions cast in the form of factual allegations."  (brackets and

quotation marks omitted)).

The only factual allegations in the Complaint that pertain to Count V are found in

paragraphs 244 and 245.  Paragraph 244 includes a single sentence citing a single document in

support of its conclusory assertion that "[i]n 2016, there was a possibility that Apple might wish

to use Siri as a form of search engine."  Compl. ¶ 244.  Specifically, Plaintiff references a "2018

e-mail from [Joan] Braddi," *id.*, which postdates the 2016 ISA Amendment by two years.  *See*

Compl. ¶ 81.  The Complaint does not allege how Apple offering users a suggested redirection in

the Safari browser—*e.g.*, to Apple's Weather app in response to a query for "weather today" or

to a Wikipedia page in response to a query for "Barack Obama"—allows for a plausible

inference that Apple had a "plan" to "use Siri as a form of search engine," much less that Google

and Apple entered into any agreement regarding Apple's development of Siri, a wholly separate

product from Safari.  Compl. ¶¶ 244-45.  The suggested redirection referenced in paragraph 244 is patently different than the Complaint's own characterization of "general search engines, which are 'one-stop shops' consumers can use to search the internet for answers to a wide range of queries" and are distinct from search services "limited to specific topics."  Compl. ¶¶ 32-33.

The Complaint also does not plausibly allege that Siri—a virtual assistant that performs user-requested actions—was a planned "search engine" in 2016 (or ever for that matter).  Indeed, this Court entered summary judgment with respect to claims regarding the promotion and distribution of Google's virtual assistant because the Plaintiffs in *United States v. Google* and *Colorado v. Google* provided no evidence that virtual assistants, like Apple's Siri, had "any substantial anticompetitive effect in search" given that virtual assistants are not used like search engines.  *United States v. Google LLC*, No. 20-cv-3010-APM, 2023 WL 4999901, at *27 (D.D.C. Aug. 4, 2023).  Furthermore, the assertion that "Google insisted that Apple shelve any such plan as a condition" of the 2016 ISA Amendment also finds no shred of support.  *See* Compl. ¶ 245.  Again, the Complaint cites only "the 2018 e-mail from Braddi," which states that "we added into the agmt that [Apple] could not expand farther than what they were doing in Sept. 2016" and that Apple "can only offer a 'Siri' suggestion exclusively for quality and not because they want to drive traffic to Siri."  Ex. E (quoted in Compl. ¶ 81).  There is no mention of Google "insist[ing]" on Apple "shelv[ing]" any plan to work on Siri.  Plaintiff's conclusory assertions as to the 2016 ISA Amendment are implausible, and Count Five, which is predicated on these inadequate assertions, should be dismissed.

## VIII.   CONCLUSION

For the foregoing reasons, the Court should dismiss all five counts of the Complaint.

Dated: March 8, 2024

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _/s/ John E. Schmidtlein_____
John E. Schmidtlein (D.C. Bar No. 441261)
Kenneth C. Smurzynski (D.C. Bar No. 442131)
Graham Safty (D.C. Bar No. 1033312)
Youlin Yuan (D.C. Bar No. 1613542)
680 Maine Avenue, SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
ksmurzynski@wc.com
gsafty@wc.com
yyuan@wc.com

*Counsel for Defendants Google LLC & Alphabet Inc.*